**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| TALIN A. TASCIYAN, | |
| Plaintiff, | |
| v. | Civil Action No. 11-1467 AW |
| MEDICAL NUMERICS *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Talin A. Tasciyan brings this action against the following Defendants: Medical Numerics; Textron Systems; and Overwatch Geospatial Systems. Ms. Tasciyan alleges claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act. Pending before the Court are the following motions: (1) Defendants' Motion for Extension of Time to Respond to Plaintiff's Complaint ("Time Extension Motion"); (2) Defendant Textron System's ("Textron") Motion to Dismiss or for Summary Judgment; (3) Defendant Overwatch Geospatial System's ("Overwatch") Motion to Dismiss or for Summary Judgment; and (4) Defendant Medical Numeric's Motion to Dismiss or for Summary Judgment. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the following reasons, the Court **DENIES-AS-MOOT** Defendants' Time Extension Motion; **GRANTS-IN-PART** and **DENIES-IN-PART** Textron's Motion to Dismiss or for Summary Judgment; **GRANTS-IN-PART** and **DENIES-IN-PART** Overwatch's Motion to Dismiss or for Summary Judgment; and **GRANTS-IN-PART** and **DENIES-IN-PART** Medical Numeric's Motion to Dismiss or for Summary Judgment.

1

## I.        FACTUAL AND PROCEDURAL BACKGROUND

Except where otherwise indicated, the Court takes the following facts from Plaintiff Talin A. Tasciyan's Complaint and views them in a light most favorable to her. Tasciyan received a PhD in biomedical engineering from Duke University in 1989. In 1999, Sensor Systems hired Tasciyan to participate in software development efforts regarding a product called MEDx. In 2003, Tasciyan "started representing the company at NIH as one of two contractors on behalf of Medical Numerics providing support for [MEDx] . . . ." Doc. 1 ¶ 9. Tasciyan remained in this capacity until her dismissal in March 2009.

Tasciyan alleges that Defendants Medical Numerics and Overwatch were divisions of Sensor Systems. Tasciyan further alleges that Defendant Textron "bought over" Medical Numerics and Overwatch in 2007.

Tasciyan alleges that Medical Numerics "had more than 15 employees." The evidence, however, plainly contradicts this allegation. The Senior Director of Medical Numerics, Douglas Tucker, swears by affidavit that "Medical Numerics did not employ more than 14 employees from the period between 2008 and 2009." Doc. 15-2 ¶ 5; *see also* Doc. 17-14. Furthermore, Tasciyan wrote in her EEOC Intake Questionnaire that Medical Numerics had only twelve employees. Doc. 17-9. Additionally, Tasciyan essentially concedes in her Opposition to Defendants' Motions to Dismiss or for Summary Judgment that Medical Numerics employed no more than fourteen employees. Tasciyan writes:

> At the time the plaintiff was employed by Medical Numerics, there were 2 employees at NIH and hence Medical Numerics had a total of **14 full time employees**. Catherine Zako of Overwatch served the plaintiff with the disciplinary report. Ms. Zako was **not a Medical Numerics employee**. Bob Cuddyer dismissed the plaintiff. Mr. Cuddyer was employed by Textron, **not with Medical Numerics**.

Doc. 17 ¶ 16 (emphasis added).

Tasciyan was the only female employee at Medical Numerics. During an October 2007 meeting, Tasciyan "half-jokingly" inquired whether she had been denied promotion because of her gender. After Textron acquired Medical Numerics, a written evaluation system was introduced to provide a means for employees to self-evaluate and to voice their annual goals. In her January 2009 self-evaluation form, Tasciyan expressed concerns that the company's failure to promote her owed to her gender.

On February 19, 2009, a Medical Numerics manager asked Tasciyan to remove her accusatory statements from the form and told her that "no one really reads these things." In early March 2009, Overwatch's Human Resources Officer, Catherine Zako, served Tasciyan with a disciplinary report. The report stated that everything had progressed reasonably well until January 5, 2011, the date of Tasciyan's performance review. On March 10, 2009, the manager of Medical Numerics ordered Tasciyan to go home, and Tasciyan disobeyed. On the following day, Tasciyan went to Overwatch, presumably to communicate with Catherine Zako, who was not in the office. Tasciyan was told to contact Bob Cuddyer of Textron. Cuddyer ordered Tasciyan to stay at home while he investigated her concerns. On March 16, 2009, Cuddyer called Tasciyan to inform her of her termination. On the same day, Tasciyan received a dismissal letter "on Textron stationery" bearing Cuddyer's signature.

On June 18, 2009, Tasciyan filed a complaint with the EEOC. Defendants contend that Tasciyan named only Textron in her EEOC charge. *See, e.g.*, Doc. 14-1, at 5 (citing Doc. 4-1). The evidence in the record contradicts this contention. Tasciyan named all three Defendants in her EEOC Intake Questionnaire. Doc. 17-9. The EEOC summarized the employer in the charge as "Textron Systems/Medical Numerics" and stated the employer's address as that of NIH in

3

Bethesda, which housed Medical Numerics. Although the charge does not explicitly name Overwatch, the above facts indicate that this is an oversight on the EEOC's part.

The EEOC issued a Right to Sue Letter on March 22, 2011. Doc. 4-1. On May 31, 2011, Tasciyan filed a Complaint. Doc. 1. Count I asserts a claim for sex discrimination in violation of Title VII, and Count II asserts a claim for retaliation in violation of the same.

On September 23, 2011, Defendants field a Time Extension Motion. (Doc. 9.) Seven days later, Defendants filed Motions to Dismiss or for Summary Judgment. (Docs. 13–15.) Defendants' filing of these motions mooted their Time Extension Motion.

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addressing a motion to dismiss, a court should first review a complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In its determination, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery "it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewcz* is consistent with more recent case law).[1]

---

[1] Although *Twombly* overruled the general 12(b)(6) standard used in *Swierkiewicz*, *Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009), the analysis discussed here remains good law. *Reed v. Airtran Airways*, 531 F. Supp.2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'") (citations omitted).

**B.      Motion for Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Material disputes are those which "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

**C.**   **Propriety of Treating Defendants' Motion to Dismiss as One for Summary Judgment**

Rule 12(d) provides that courts must treat 12(b)(6) motions as motions for summary judgment where the court considers matters outside the pleadings. Fed. R. Civ. P. 12(d). In such cases, courts must give the defendant a "reasonable opportunity to present all the material that is pertinent to the motion." *Id.* (emphasis added). The term "reasonable opportunity" entails two basic requirements. One, the defendant must have some indication that the court is treating the motion as one for summary judgment. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citations omitted). A defendant's awareness that material outside the pleadings is pending before the court satisfies this notice requirement. *See id.* Two, courts must satisfy themselves that the nonmoving party has had a fair opportunity to discover information essential to oppose the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (citing Fed. R. Civ. P. 56(f)).

In this case, Defendants' Motion to Dismiss or for Summary Judgments' alternative captions and attached exhibits satisfy the notice requirement. *See Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 260–61 (1998). The fairness requirement, however, is satisfied only in part. It is appropriate for the Court to consider evidence relating to whether Medical Numerics employs fewer than fifteen employees because Tasciyan's own documentation, which Tasciyan attached to her Opposition, clearly indicates that Medical Numerics has fewer than fifteen employees. Moreover, Tasciyan more or less concedes as much in her Opposition. Given that Tasciyan's own evidence and declarations agree with Defendants evidence, Tasciyan has had a fair opportunity to discover evidence essential to oppose the motion. In other words, it is exceedingly unlikely that any evidence exists by which Tasciyan could oppose Medical Numeric's Motion to Dismiss or for Summary Judgment on this ground.

The Court declines, however, to consider materials outside the Complaint in relation to Defendants' argument that Medical Numerics is not integrated with Textron and Overwatch for the purposes of the integrated employer test. The Court explains below why it would be unfair for the Court to do so.

## III.   LEGAL ANALYSIS

### A.   Is Medical Numerics an Employer Under Title VII and, if not, Is Medical Numerics Integrated with Textron and Overwatch?

Title VII provides that it is unlawful for an "employer" to discriminate on the basis of sex. 42 U.S.C.A. § 2000e-2. "'Employer' means a person engaged in an industry affecting commerce who has **fifteen or more employees** for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." *Id.* § 2000e (emphasis added). An employer who employees fewer than fifteen employees does not satisfy Title VII's statutory definition of employer and, therefore, is not subject to discrimination actions founded on Title VII. *See Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 212 (1997).

A plaintiff may bring a Title VII claim against an employer with fewer than fifteen employees where that employer is "integrated" with another employer/s with a sufficient number of employees. *See, e.g.*, *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp.2d 847, 874 (D. Md. 2000). Courts apply the "integrated employer test" to make this determination. *Id.* (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir.1999)). Under this test, "the court considers the existence of four factors between the parent and its subsidiary: (1) common management; (2) the interrelation between operations; (3) centralized control; and (4) the degree of common ownership and financial control." *Id.* (quoting Hukill, 192 F.3d at 442). The *Glunt* court expounded the meaning of these factors:

> In applying the integrated enterprise test, courts have noted the following to be probative evidence that one company employs the other's employees for purposes of Title VII liability: (1) one company's employees hired and fired the other's employees and/or authorized [layoffs], recalls, and promotions of such employees; (2) one company routinely transferred employees between it and the other company, used the same work force, and/or handled the other's payroll, (3) one company exercises more than general oversight of the other's operations by supervising the other's daily operations, such as production, distribution, purchasing, marketing, advertising, and accounts receivable, (4) the companies have common management in the form of interlocking boards of directors and/or common officers and managers, (5) the companies fail to observe basic formalities like keeping separate books and holding separate shareholder and board meetings, (6) the companies fail to maintain separate bank accounts, and (7) the companies file joint tax returns.

*Id.* (quoting *Thomas v. Bet Sound–Stage Rest./BrettCo, Inc.*, 61 F. Supp.2d 448 (D. Md. 1999)). The integrated employer test necessitates a fact-intensive inquiry. *Compare Johnson v. Flowers Indus.*, 814 F.2d 978, 982 (noting that the integrated employer test mirrors the piercing the corporate veil analysis in the corporate law context), *with Winner Acceptance Corp. v. Return on Capital Corp.*, Civil Action No. 3088–VCP, 2008 WL 5352063, at *5 (Del. Ch. 2008) (characterizing the piercing the corporate veil analysis as a "fact intensive inquiry"). Therefore, it is ordinarily inappropriate for courts to apply the integrated employer test at the motion to dismiss stage. *Cf. Johnson v. Ross*, 419 Fed. App'x. 357, 363 (4th Cir. 2011) (applying West Virginia law) (stating that the piercing the corporate veil analysis is so fact-intensive that it is ordinarily inappropriate for resolution at the summary judgment stage); *Glunt*, 123 F. Supp.2d at 874 (applying the integrated employer test "[a]fter months of discovery").

In this case, a reasonable juror could only conclude that Medical Numerics is not an employer within the meaning of Title VII. The undisputed evidence shows that Medical Numerics did not have fifteen employees during the time that Tasciyan alleges that Medical Numerics engaged in the discriminatory conduct. Douglas Tucker states in his affidavit that Medical Numerics employed no more than fourteen employees in 2008 and 2009. Tellingly,

Tasciyan wrote in her EEOC Intake Questionnaire that Medical Numerics had only twelve employees. And if the foregoing evidence does not dispose of the issue, Tasciyan explicitly states that "[a]t the time the plaintiff was employed by Medical Numerics, . . . Medical Numerics had a total of **14 full time employees**." Doc. 17 ¶ 16 (emphasis added). Granted, Tasciyan goes on to argue that "the staff of Medical Numerics was augmented by other employees, making the total greater than 15." *Id.* But the relevant evidence in the record, including Tasciyan's own documentation, flatly contradicts this assertion. Furthermore, Tasciyan's assertion that other employees augmented Medical Numeric's staff makes no sense in context. Tasciyan writes:

> At the time the plaintiff was employed by Medical Numerics, there were 2 employees at NIH and hence Medical Numerics had a total of 14 full time employees. Catherine Zako of Overwatch served the plaintiff with the disciplinary report. Ms. Zako was **not** a Medical Numerics employee. Bob Cuddyer dismissed the plaintiff. Mr. Cuddyer was employed by Textron, **not** with Medical Numerics. So, the staff of Medical Numerics was augmented by other employees, making the total greater than 15.

*Id.* (emphasis added). Clearly, Tasciyan states that Zako and Cuddyer were "not" Medical Numerics employees; *see also* Doc. 14-2 (Zako's declaration that she is an employee of Overwatch). It is thus illogical to assert that these employees "augment" the staff of Medical Numerics. Accordingly, the Court grants Medical Numeric's Motion to Dismiss or for Summary Judgment in relation to its argument that Medical Numerics is not, *per se*, an employer under Title VII.

Defendants also argue that Medical Numerics is not integrated with them for the purposes of the integrated employer test. It is premature for the Court to consider this argument. As expounded above, the integrated employer test entails a fact-intensive inquiry and, therefore, is ordinarily inappropriate for resolution at the motion to dismiss stage. In other words, without some discovery, Tasciyan would not have a meaningful opportunity to satisfy the elements of the

integrated employer test. Therefore, the Court declines Defendants' invitation to treat their Motion to Dismiss or for Summary Judgment as one for summary judgment with respect to their argument that Medical Numerics is not integrated with Textron and Overwatch. To be sure, this ruling does not prejudice the rights of Defendants to renew this argument at a later stage in the proceedings.

Albeit in dicta, the Court notes that Tasciyan has adduced some evidence tending to indicate that Textron and Overwatch had a meaningful relationship with Medical Numerics. This evidence includes: (1) a disciplinary report with the heading "Textron Systems" stating that the location of underlying incident was "Medical Numerics/NIH," Doc. 4-3; (2) a termination letter from Textron, Doc. 4-4; (3) a pay stub from Textron, Doc. 17-6; and (4) a letter Zako (i.e. Human Resources Manager at Overwatch) sent Tasciyan in connection with her termination bearing the heading "Overwatch/Textron Systems." Doc. 17-15. The Court does not suggest that this evidence suffices to satisfy the integrated employer test. The Court highlights it merely to illustrate that Tasciyan has made some efforts to demonstrate that Medical Numerics was integrated with Textron and Overwatch.

As for the Complaint, Tasciyan asserts that Textron "bought over" Medical Numerics and Overwatch. She also avers that Medical Numerics continued to use the "Human Resources and Accounting personnel of Overwatch on a regular basis and reported to Overwatch several times during the year." Doc. 1-1 ¶ 12. Given the fact-intensive nature of the integrated employer test, these allegations, if true, state a plausible claim that Defendants were integrated employers for Title VII purposes.

In sum, no reasonable juror could conclude that Medical Numerics, *per se*, is an employer within the meaning of Title VII. It is premature, however, for the Court to rule on

Textron's and Overwatch's Motions for Summary Judgment in relation to the argument that they lack integration with Medical Numerics. Finally, Tasciyan has stated a cognizable claim that Defendants were integrated employers under Title VII.

**B.      Did Tasciyan Exhaust Administrative Remedies?**

Defendants Medical Numerics and Overwatch argue that Tasciyan failed to exhaust her administrative remedies in relation to them by failing to name them in her EEOC charge. This argument is specious. The only evidence these Defendants cite to support this argument is Tasciyan's Right to Sue Letter. It states in this letter's bottom, left-hand corner that the EEOC sent a carbon copy to "Textron Systems." How this proves Tasciyan failed to name Overwatch and Textron in her EEOC charge is beyond the Court's ken. Besides, as set forth above, more relevant evidence (e.g. the charge itself) indicates that Tasciyan named Medical Numerics and Overwatch in her charge. *Compare* Doc. 17-10, *with* Doc. 17-9. Accordingly, no reasonable juror could conclude that Tasciyan failed to exhaust her administrative remedies on this ground.

**C.      Sex Discrimination**

Defendants argue that Tasciyan has failed to state a claim for sex discrimination under Title VII. The *McDonnell Douglas* evidentiary framework applies to sex discrimination claims based the failure to promote. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Alvarado v. Bd. of Trs. of Mont. Cmty. College*, 928 F.2d 118, 121 (4th Cir. 1991)). Under this framework, the plaintiff must prove that: "(1) [s]he is a member of a protected group; (2) [s]he applied for the position in question; (3) [s]he was qualified for the position; and (4) [s]he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802; *Alvarado*, 928 F.2d at 121). Although the law contains no

*per se* requirement that the plaintiff allege each element of the prima facie case, a complaint still "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Compare Swierkiewicz*, 534 U.S. at 508, *with Iqbal*, 129 S. Ct. at 1949 (citation omitted).

Tasciyan's Complaint fails to state a facially plausible claim for sex discrimination. Tasciyan bases her sex discrimination claim on the following factual allegations: (1) she was the only female employee at Medical Numerics; (2) she was not promoted based on her sex; and (3) Defendants retaliated against her when she complained in 2009 that she might not have been promoted because of her sex.[2] These threadbare allegations fail to support the inference that Tasciyan actually applied for a promotion in 2009.  Even if they did, they still fail to support the inference that Defendants' failure to promote Tasciyan owed to her sex. Tasciyan fails to allege that her employer referred to her in sex-specific terms, code words, or otherwise communicated to her in a way indicating sexual animus. Nor does Tasciyan allege that one or more similarly situated males received a promotion. Although Ms. Tasciyan's being the only female employee at Medical Numerics may suggest sexual underrepresentation, Medical Numerics is such a small outfit that this allegation is, at best, marginally significant. Indeed, Tasciyan acknowledges that one of the persons involved in her termination, Zako, is a woman. Granted, Tasciyan's allegations, if true, make it plausible that her employer retaliated against her for complaining about perceived sex discrimination. But an allegation of retaliation, *per se*, is insufficient to justify the inference that the firing owed to the employee's sex. Other things being equal, it is just as likely that the retaliation was a reaction to the employee's complaint, not her sex. *Cf.*

---

[2] Tasciyan also alleges in her Complaint that she "half-jokingly" inquired in October 2007 that she had been denied promotion because of her gender. This allegation is entitled to no weight because Tasciyan failed to file a EEOC charge within 300 days of the underlying incident. *See Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp.2d 587, 592–94 (D. Md. 2000). In fact, Tasciyan concedes in her opposition that she does not base her sex discrimination claim on this incident. Doc. 17 ¶ 7.

*Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 867–86 (2011) (noting that an employer fired a female employee's boyfriend after she filed a charge of sex discrimination and holding that these facts, if true, could violate title VII's antiretaliation provision).

For the foregoing reasons, Tasciyan has failed to state a cognizable claim for sex discrimination under Title VII. Therefore, the Court dismisses Count I of her Complaint. This dismissal is without prejudice to the right of Tasciyan to file an Amended Complaint **within fourteen days** of the Court's issuance of this Memorandum Opinion and accompanying Order.

**D.     Retaliation**

To establish a claim of retaliation under Title VII, Tasciyan must show: (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the adverse employment action. *Davis v. Dimensions Health Corp.*, 639 F. Supp.2d 610, 616–17 (D. Md. 2009) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir.2007)). An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits. *Id.* (citing *Rachel-Smith v. FTData, Inc.*, 247 F. Supp.2d 734, 747 (D. Md.2003)). One court has defined opposition as "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.* (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct that she opposes constitutes unlawful discrimination under Title VII. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001). Opposition almost always arises when an employee communicates to her employer her reasonable belief that that the

employer has engaged in discrimination. *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 276 (2009).

In this case, Tasciyan alleges that she received a Ph.D. from a prestigious university and worked for her employer for approximately six years before her termination. She further alleges that she was the only female in the office. Tasciyan also asserts that, in January 2009, she communicated to her employer in her evaluation form her belief that she had been denied promotion because of her sex. Additionally, Tasciyan asserts that the manager of Medical Numerics ordered her to remove her complaints from the evaluation form on February 19, 2009. Finally, Tasciyan contends that her employer terminated her on March 16, 2011.

These allegations, albeit lacking, suffice to state a facially plausible claim for retaliation under Title VII. Tasciyan communicated to her employer her belief that her employer's failure to promote her constituted discrimination; therefore, the key question is whether the allegations sustain the inference that Tasciyan's belief was reasonable. Although it is a close call, it is plausible that the sole female employee in an office, untutored in the law, could have a reasonable belief that her employer's failure to promote her constituted unlawful discrimination. After all, Tasciyan asserts that she had a Ph.D. from a prestigious university and worked for Medical Numerics for around six years. Given her educational credentials, length of service, and sexual singularity, it is plausible that discovery could reveal facts further substantiating the reasonableness of Tasciyan's belief that her employer discriminatorily failed to promote her.[3]

Defendants argue that the Tasciyan's firing lacked sufficient temporal proximity to her complaint of discrimination to warrant the inference of causation. The Court disagrees. Taken as true, Tasciyan's factual contentions demonstrate that her employer fired her two to two-and-a

---

[3] This conclusion is not inconsistent with the Court's conclusion that Tasciyan failed to state a cognizable claim for sex discrimination. Whether a person plausibly has a *reasonable belief* that her employer has discriminated against her is a separate inquiry from whether a person has stated a plausible *claim for relief* for sex discrimination.

half months after she complained about perceived discrimination. Although this length of time is not insignificant, the Court declines to hold that two to two-and-a-half months is insufficient as a matter of law to prove causation. *See Williams v. Cerberonics, Inc.*, 871 F.2d 454, 457 (4th Cir. 1989) (holding that proof that an employer fired an employee three months after the employee filed a charge of discrimination sufficed to state a prima facie case of causation). The Court's disposition is particularly proper seeing that Tasciyan alleged that the manager ordered her to remove the complaint from her evaluation form approximately one-and-a-half months after Tasciyan submitted it. This allegation, if true, discredits the suggestion that Tasciyan relies on temporal proximity alone to show causation. Defendants' reliance on *Pascual v. Lowe's Home Center, Inc.*, 193 Fed. App'x. 229, 233 (4th Cir. 2006), is therefore misplaced. The *Pascual* court held that a "three to four" month gap between the employee's termination and the protected activity was too long to establish a causal connection by **temporal proximity alone**." *Id.* (emphasis added). Here, Tasciyan does not rely on temporal proximity alone and, furthermore, the firing occurred only two to two-and-a-half months after she complained about discrimination. Accordingly, Tasciyan has stated a cognizable claim for retaliation under Title VII.

## IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES-AS-MOOT** Defendants' Time Extension Motion (Doc. 9); **GRANTS-IN-PART** and **DENIES-IN-PART** Textron's Motion to Dismiss or for Summary Judgment (Doc. 13); **GRANTS-IN-PART** and **DENIES-IN-PART** Overwatch's Motion to Dismiss or for Summary Judgment (Doc. 14); and **GRANTS-IN-PART** and **DENIES-IN-PART** Medical Numeric's Motion to Dismiss or for Summary Judgment (Doc. 15). Consequently:

- The Court **GRANTS** summary judgment in favor of Medical Numerics relative to its argument that it is not an employer, *per se*, within the meaning of Title VII;

- The Court **DENIES** Defendants' Motions to Dismiss or for Summary Judgment in relation to the argument that they are not integrated employers within the meaning of Title VII;

- The Court **DISMISSES** Plaintiff's claim for sex discrimination under Title VII *without prejudice*, with the result that Tasciyan must submit an Amended Complaint **within fourteen days** of the Court's issuance of this Memorandum Opinion and accompanying Order; AND

- The Court **DENIES** Defendants' Motions to Dismiss or for Summary Judgment in relation to Plaintiff's claim for retaliation under Title VII.

The Court will issue a Scheduling Order.


____October 28, 2011____                                    _____/s/_____
        Date                                                        Alexander Williams, Jr.
                                                                    United States District Judge

17