**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| TALIN A. TASCIYAN, | |
| Plaintiff, | |
| v. | Civil Action No. 11-1467 AW |
| MEDICAL NUMERICS *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Talin A. Tasciyan brings this action against the following Defendants: Medical Numerics; Textron Systems; and Overwatch Geospatial Systems. Tasciyan asserts claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act. Pending before the Court are (1) Plaintiff's Cross-Motion for Summary Judgment and (2) Plaintiff's Motion for Reconsideration. The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the following reasons, the Court **DENIES** Plaintiff's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Reconsideration.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an employment dispute between Plaintiff Talin A. Tasciyan and the following Defendants: Medical Numerics; Textron Systems; and Overwatch Geospatial Systems. On May 31, 2011, Tasciyan filed a Complaint against Defendants. Doc. 1. Tasciyan asserted claims for sex discrimination and retaliation. Defendants eventually filed Motions to Dismiss or for Summary Judgment ("Motions to Dismiss"). Docs. 13–15. In a Memorandum Opinion and

Order ("Opinion") issued on October 31, 2011, the Court granted in part and denied in part Defendants' Motions to Dismiss. Docs. 24–25. In this Opinion, the Court held that Tasciyan stated a cognizable claim for retaliation. However, the Court dismissed Tasciyan's sex discrimination claim. In the Opinion, the Court stated that its dismissal of Tasciyan's claim was without prejudice to the right of Tasciyan to file an Amended Complaint within fourteen days.

On November 2, Tasciyan filed a document containing the dual-caption of "Plaintiff's Reply to Memorandum Opin[i]on" and (2) "Amendment to Complaint." Doc. 26. The Court treats this Document as both an Amended Complaint and Motion for Reconsideration and alternatively refers to it as such. The Amended Complaint adds very little, if anything, to Tasciyan's Complaint. Arguably, it is more deficient in that Tasciyan omits most of the factual allegations from her Complaint. Considering that Tasciyan is a *pro se* plaintiff, the Court construes the Amended Complaint liberally and treats it as incorporating the allegations from the original Complaint. For all that, the Amended Complaint essentially adds just one new allegation: that Medical Numerics failed to promote Tasciyan in 2007 even as it promoted similarly situated men.

Additionally, a few days before the Court issued its Opinion, Tasciyan filed a document that she captioned as "Plaintiff's Cross-Motion for Summary Judgment." Doc. 23. Tasciyan's Cross-Motion for Summary Judgment is a rambling half-page document to which Tasciyan attaches no evidence.  On December 2, 2011, Defendants answered. Doc. 29.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the

U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B.     Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986)).  To defeat a motion for summary judgment, the nonmoving party must come

forward with affidavits or other similar evidence to show that a genuine issue of material fact

exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A

disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Material disputes are those

which "might affect the outcome of the suit under the governing law." *Id.*

In pertinent part, the Court should believe the evidence of the nonmoving party and draw all

justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of

material fact "through mere speculation or the building of one inference upon another." *See Beal

v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Further, if the nonmoving party "fails to properly

support an assertion of fact or fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion."

Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no

evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro

Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### C.      Motion for Reconsideration

In pertinent part, Rule 54(b) provides that Courts may revise interlocutory orders "at any

time before the entry of a judgment." Fed. R. Civ. P. 54(b); *see also Moses H. Cone Mem. Hosp.

v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (footnote omitted) (noting that "every order short

of a final decree is subject to reopening at the discretion of the district judge"). In view of this

discretion, "[m]otions for reconsideration of interlocutory orders are not subject to the strict

standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v.

Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citation omitted). Nevertheless,

"doctrines such as law of the case . . . have evolved as a means of guiding" district courts'
discretion to reconsider interlocutory orders. *Id.* at 515 (citing *Sejman v. Warner–Lambert Co.,
Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)). The law of the case doctrine dictates that courts must
follow the law that a prior decision establishes unless "'(1) a subsequent trial produces
substantially different evidence, (2) controlling authority has since made a contrary decision of
law applicable to the issue, or (3) the prior decision was clearly erroneous and would work
manifest injustice.'" *See Sejman*, 845 F.2d at 69 (quoting *EEOC v. Int'l Longshoremen's Assoc.*,
623 F.2d 1054, 1058 (5th Cir. 1980)). Albeit omnipresent, the law of the case doctrine cannot
positively prohibit a district court from reconsidering an interlocutory order in light of federal
courts' "ultimate responsibility . . . to reach the correct judgment under law." *Murphy Farms*,
326 F.3d at 515. Yet "concerns of finality and judicial economy" may temper this responsibility.
*Id.* Therefore, relief is rarely ever appropriate "[w]hen the motion raises no new arguments, but
merely requests the district court to reconsider a legal issue or to change its mind." *Pritchard v.
Wal Mart Stores, Inc.*, 3 Fed. App'x 52, 53 (4th Cir. 2001) (citation and internal quotation marks
omitted).

## III.    LEGAL ANALYSIS

### A.    *Sua Sponte* Dismissal of Sex Discrimination Claim

Despite its temptation, the Court declines to dismiss Tasciyan's sex discrimination claim
*sua sponte*. The following discussion demonstrates the pleading deficiency of Tasciyan's
Amended Complaint. Notwithstanding this deficiency, it is unsettled whether a district court may
dismiss an amended complaint *sua sponte* for failure to state a claim under Rule 12(b)(6). *See
Neitzke v. Williams*, 490 U.S. 319, 330 n.8 (1989); *Cochran v. Morris*, 73 F.3d 1310, 1315 (4th
Cir. 1996). To be sure, this decision does not prejudice the right of Defendants to move for

judgment on the pleadings. *See* Fed R. Civ. P. 12(c); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Furthermore, considering that Defendants raised the defense of failure to state a claim in their Answer, Defendants may still have wiggle room to move to dismiss under Rule 12(b)(6). *See generally* 5C Charles Alan Wright et al., Federal Practice and Procedure § 1361 & n.7 (3d ed.) (collecting cases); *but see Lane v. Wynne*, Civil No. PJM-04-1051, 2006 WL 4711891, at *2 n.6 (D. Md. June 23, 2006) ("However, given the clear language of Rule 12(b), the Court does not see how a Motion to Dismiss filed after an Answer could ever be deemed timely. As such, the best course of action is to simply treat the Motion as one for judgment on the pleadings.").

The Court recites the following pertinent section of its prior Opinion by way of background:

> Tasciyan's Complaint fails to state a facially plausible claim for sex discrimination. Tasciyan bases her sex discrimination claim on the following factual allegations: (1) she was the only female employee at Medical Numerics; (2) she was not promoted based on her sex; and (3) Defendants retaliated against her when she complained in 2009 that she might not have been promoted because of her sex. These threadbare allegations fail to support the inference that Tasciyan actually applied for a promotion in 2009. Even if they did, they still fail to support the inference that Defendants' failure to promote Tasciyan owed to her sex. Tasciyan fails to allege that her employer referred to her in sex-specific terms, code words, or otherwise communicated to her in a way indicating sexual animus. Nor does Tasciyan allege that one or more similarly situated males received a promotion. Although Ms. Tasciyan's being the only female employee at Medical

Numerics may suggest sexual underrepresentation, Medical Numerics is such a small outfit that this allegation is, at best, marginally significant. Indeed, Tasciyan acknowledges that one of the persons involved in her termination, Zako, is a woman. Granted, Tasciyan's allegations, if true, make it plausible that her employer retaliated against her for complaining about perceived sex discrimination. But an allegation of retaliation, per se, is insufficient to justify the inference that the firing owed to the employee's sex. Other things being equal, it is just as likely that the retaliation was a reaction to the employee's complaint, not her sex. *Cf. Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 867–86 (2011) (noting that an employer fired a female employee's boyfriend after she filed a charge of sex discrimination and holding that these facts, if true, could violate Title VII's antiretaliation provision).

*Tasciyan v. Med. Numerics*, Civil Action No. 11–1467 AW, 2011 WL 5119465, at *8 (D. Md. Oct. 28, 2011) (footnote omitted).

The facts in this case differ from those recounted in the preceding excerpt only insofar as the Amended Complaint states that Medical Numerics failed to promote Tasciyan in 2007 even as it promoted similarly situated men. If the Court accepted the truth of this allegation, the Court might be inclined to rule that Tasciyan has stated a cognizable claim for sex discrimination. The added allegation, however, relates to a 2007 incident. As the Court indicated in its Opinion, Tasciyan's allegations from 2007 are "entitled to no weight because Tasciyan failed to file an EEOC charge within 300 days of the underlying incident." *Id.* n.2 (citing *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp.2d 587, 592–94 (D. Md. 2000)); *see also* 42 U.S.C. § 2000e-

5(e)(1) (providing that Title VII plaintiffs in deferral states must file charges of discrimination "within three hundred days after the alleged unlawful employment practice occurred").

Tasciyan does not dispute that she did not file an EEOC charge until June 18, 2009. Therefore, as a general matter, Tasciyan must base her sex discrimination claim on events that transpired no later than August 22, 2008.  Construed leniently, Tasciyan appears to argue in an earlier brief that the Court should consider incidents in 2007 based on the theory that they were part of a continuing violation.

"The continuing violation theory (a type of equitable tolling) applies where the 'plaintiff proves that it would have been impossible for a reasonably prudent person to learn that [an employment action] was discriminatory.'" *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp.2d 587, 593 (D. Md. 2000) (alteration in original) (quoting *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 200 (4th Cir. 1990)) (some internal quotation marks omitted). Generally, "[s]uch impossibility exists only where the plaintiff is unaware of the facts giving rise to the claim because the defendant has intentionally concealed them." *See id.* (citing *Olson*, 904 F.2d at 201).

In this case, Tasciyan neither alleges nor argues that Defendants have deliberately concealed facts giving rise to her discrimination claims. In fact, as the Court's prior Opinion notes, Tasciyan explicitly states in her Complaint that she "'half-jokingly' inquired at the October 2007 meeting whether she had been denied promotion because of her gender." Doc. 1 ¶ 15. The next line of the Complaint reads that "[Tasciyan] did not pursue the matter any further for another year." *Id.* Indeed, Tasciyan alleges no further incidents of discrimination until January 2009. *See id.* at 4–6. In sum, Tasciyan's own factual contentions illustrate that she knew the 2007 incident was discriminatory and failed to file a charge in relation to it.

The preceding discussion demonstrates that Tasciyan's Amended Complaint adds one allegation to her Complaint and that this allegation warrants no weight. Tasciyan has had two bites at the apple and there is no reason to think that a third bite would bear fruit. Nevertheless, the Court deems it advisable to resist the temptation to dismiss the Amended Complaint *sua sponte*. At a minimum, the above analysis apprises Tasciyan of the deficiency of her Amended Complaint.

**B.      Motion for Reconsideration**

As expounded above, granting a motion for reconsideration is rarely ever appropriate when the motion raises no new arguments but merely requests the Court to change its mind. In her Motion for Reconsideration, Tasciyan states that she "would greatly appreciate it if the Court would reconsider the Plaintiff's original gender/sex discrimination charge in view of the evidence introduced in this Amendment to the Complaint." Doc. 26 at 2. Tasciyan's description of her Motion for Reconsideration is inaccurate. Tasciyan includes no evidence with the Motion. Rather, as stressed in the preceding section, Tasciyan asserts only that her "discrimination claim goes back to 2007." *Id.* at 1. To reiterate, Tasciyan's failure to file a timely charge of sex discrimination based on 2007's events vitiates their legal force. Although the Motion for Reconsideration contains some additional statements, they amount to a muddled rehash of Tasciyan's prior pleadings. Therefore, the Court denies Tasciyan's Motion for Reconsideration.

**C.      Cross-Motion for Summary Judgment**

Pertinently, Rule 56 reads as follows:

(c) PROCEDURES.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed **must** support the assertion by:

>  (A) **citing to particular parts of materials in the record**, including depositions,
>
>  documents, electronically stored information, affidavits or declarations,
>
>  stipulations (including those made for purposes of the motion only), admissions,
>
>  interrogatory answers, or other materials; . . . .

Fed. R. Civ. P. 56(c) (emphasis added). Here, with one possible exception, Tasciyan fails to cite particular parts of materials in the record in her Cross-Motion for Summary Judgment. Indeed, Tasciyan's Cross-Motion for Summary Judgment is rambling half-page document that regurgitates allegations from the Complaint. Therefore, save the argument addressed in the following paragraph, the Court denies Tasciyan's self-styled Cross-Motion for Summary Judgment for failure to comply with the above-excerpted section of Rule 56.

Reading the Cross-Motion for Summary Judgment liberally, Tasciyan argues that no genuine dispute exists whether Defendants are integrated employers because the evidence in the record shows that (1) Textron issued Tasciyan's paychecks and (2) Tasciyan's business card had an Overwatch mailing address. Although Tasciyan failed to properly cite this evidence in her Cross-Motion for Summary Judgment, the Court considers it under Rule 56 in light of the Court's familiarity with this evidence. All the same, as the subsequent passage from the Court's prior Opinion shows, this evidence completely fails to compel the conclusion that no genuine dispute exists regarding Defendants' integrated employer status:

>  Title VII provides that it is unlawful for an "employer" to discriminate on the
>
>  basis of sex. 42 U.S.C.A. § 2000e-2. "'Employer' means a person engaged in an
>
>  industry affecting commerce who has **fifteen or more employees** for each
>
>  working day in each of twenty or more calendar weeks in the current or preceding
>
>  calendar year . . . ." *Id.* § 2000e (emphasis added). An

employer who employees fewer than fifteen employees does not satisfy Title VII's statutory definition of employer and, therefore, is not subject to discrimination actions founded on Title VII. *See Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 212 (1997).

A plaintiff may bring a Title VII claim against an employer with fewer than fifteen employees where that employer is "integrated" with another employer/s with a sufficient number of employees. *See, e.g.*, *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp.2d 847, 874 (D. Md. 2000). Courts apply the "integrated employer test" to make this determination. *Id.* (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir.1999)). Under this test, "the court considers the existence of four factors between the parent and its subsidiary: (1) common management; (2) the interrelation between operations; (3) centralized control; and (4) the degree of common ownership and financial control." *Id.* (quoting *Hukill*, 192 F.3d at 442). The *Glunt* court expounded the meaning of these factors:

> In applying the integrated enterprise test, courts have noted the following to be probative evidence that one company employs the other's employees for purposes of Title VII liability: (1) one company's employees hired and fired the other's employees and/or authorized [layoffs], recalls, and promotions of such employees; (2) one company routinely transferred employees between it and the other company, used the same work force, and/or handled the other's payroll, (3) one company exercises more than general oversight of the other's operations by supervising the other's daily operations, such as production, distribution, purchasing, marketing, advertising, and accounts receivable, (4) the companies have common management in the form of interlocking boards of directors and/or common officers and managers, (5) the companies fail to observe basic formalities like keeping separate books and holding separate shareholder and board meetings, (6) the companies fail to maintain separate bank accounts, and (7) the companies file joint tax returns.

*Id.* (quoting *Thomas v. Bet Sound–Stage Rest./BrettCo, Inc.*, 61 F. Supp.2d 448

(D. Md. 1999)). The integrated employer test necessitates a fact-intensive inquiry.

*Compare Johnson v. Flowers Indus.*, 814 F.2d 978, 982 (noting that the integrated

employer test mirrors the piercing the corporate veil analysis in the corporate law

context), *with Winner Acceptance Corp. v. Return on Capital Corp.*, Civil Action

No. 3088–VCP, 2008 WL 5352063, at *5 (Del. Ch. 2008) (characterizing the

piercing the corporate veil analysis as a "fact intensive inquiry"). Therefore, it is

ordinarily inappropriate for courts to apply the integrated employer test at the

motion to dismiss stage. *Cf. Johnson v. Ross*, 419 Fed. App'x. 357, 363 (4th Cir.

2011) (applying West Virginia law) (stating that the piercing the corporate veil

analysis is so fact-intensive that it is ordinarily inappropriate for resolution at the

summary judgment stage); *Glunt*, 123 F. Supp.2d at 874 (applying the integrated

employer test "[a]fter months of discovery").

*Tasciyan*, 2011 WL 5119465, at *5. Given the fact-intensive nature of the integrated employer

test, a company's apparent issuance of one paycheck to an employee and the presence of another

company's address on an employee's business card are insufficient as a matter of law to show

that these two employers are integrated with an employee's immediate employer. Accordingly,

the Court denies Tasciyan's Cross-Motion for Summary Judgment.

**IV.      CONCLUSION**

For the reasons set forth above, the Court **DENIES** Plaintiff's Cross-Motion for Summary Judgment (Doc. 23) and **DENIES** Plaintiff's Motion for Reconsideration (Doc. 26). As it has apparently yet to do so, the Court will issue a Scheduling Order.


_____December 6, 2011_____                          _____/s/_____
                    Date                                   Alexander Williams, Jr.
                                                           United States District Judge