**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

|  |  |
|---|---|
| TALIN A. TASCIYAN, | |
| Plaintiff, | |
| v. | Civil Action No. 11-1467 AW |
| MEDICAL NUMERICS *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Talin A. Tasciyan brings this action against the following Defendants: Medical Numerics; Textron Systems; and Overwatch Geospatial Systems. Plaintiff asserts a retaliation claim under Title VII. Pending before the Court are the following motions: (1) Defendants' Motion for Summary Judgment; and (2) Plaintiff's Motion to Amend. The Court has reviewed the entire record and deems no hearing necessary. For the following reasons, the Court **DENIES** Defendants' Motion for Summary Judgment, **DENIES** Defendants' Motion to Strike, and **DENIES** Plaintiff's Motion to Amend.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Talin Tasciyan (Tasciyan) received a PhD in biomedical engineering from Duke University in 1989. In 1999, a company named Sensor Systems hired Tasciyan to participate in software development efforts. At some point, Sensor Systems became Medical Numerics. Tasciyan worked at Medical Numerics in a similar capacity. Tasciyan remained with Medical Numerics until her March 2009 termination.

Tasciyan alleges that Defendants Medical Numerics and Overwatch Geospatial Systems (Overwatch) were divisions of Sensor Systems. Tasciyan further alleges that Defendant Textron System (Textron) bought out Medical Numerics and Overwatch in 2007. As explained more fully below, Defendants dispute Tasciyan's characterization of their relationship, contending that they are separate entities.

In March 2008, Tasciyan was called to a meeting with the following officials: Jeff Solomon, Bob Steagall, and Catherine Zako. Solomon and Steagall supervised Tasciyan at Medical Numerics. Zako worked as Overwatch's Human Resources Officer. Defendants assert that this meeting stemmed from Tasciyan's professional misconduct, including sending abusive emails, creating conflicts with coworkers, and yelling at supervisors. Although Tasciyan states that she has little recollection of what the parties discussed at the interview, she acknowledges the existence of allegations that she was creating problems in the workplace. On January 5, 2009, Tasciyan received a performance review stating that the issues discussed in the March 2008 meeting were "progressing reasonably well." Doc. No. 39-7 at 2.

Tasciyan was the only female employee at Medical Numerics. Doc. No. 15-3. In January 2009, Tasciyan completed a self-evaluation form. *See* Doc. No. 39-4 at 30–31. In this form, Tasciyan expressed concerns that Medical Numerics' failure to promote her was due to her gender. Specifically, Tasciyan stated that Medical Numerics failed to include her in certain discussions possibly because of her sex. Consequentially, in Tasciyan's view, her supervisors were unable to assess her qualifications even though she had comparable credentials and background experience to her coworkers. *See* Doc. No. 41-7.

On February 19, 2009, Tasciyan testifies that Solomon and Steagall met with her and asked her to remove her statements from the evaluation form because they were inappropriate.

*See* Doc. No. 39-4 at 30. Defendants do not dispute that they determined the comments to be "inappropriate in the context of a self-evaluation." Doc. No. 39-1 at 5.

In February 2009, Tasciyan was tasked with writing a computer script for a customer. On February 17, 2009, Tasciyan wrote the script and emailed it to a customer, copying Solomon. Doc. No. 39-6 at 2. In an email response to both Tasciyan and the customer, Solomon questioned whether Tasciyan had written the script correctly. Tasciyan sent Solomon an email reply in which she copied the customer. The reply states: "Why do you think it's different from what was proposed. I'm surprised you can decide so quickly without even consulting me." *Id.*

On or about March 10, 2009, Tasciyan was called to a second disciplinary meeting. At this meeting, Zako served Tasciyan with a disciplinary report. The report states that, although the situation discussed in the March 2008 meeting had progressed reasonably well, two recent developments displayed professional misconduct: (1) the email incident described above; and (2) Tasciyan's "ongoing volatile behavior" with her supervisor. Doc. No. 39-7 at 2.

Defendants allege that Tasciyan grew belligerent at the meeting and stormed out. Although Tasciyan does not entirely dispute this description of her behavior, she suggests that the lies Solomon, Steagall, and Zako levied at her induced her behavior.

Tasciyan returned to Medical Numerics after the meeting. There, on behalf of Textron's HR department, Steagall emailed Tasciyan and ordered her to take the rest of the day off. Doc. No. 39-8. In a responsive email, Tasciyan stated that she was not going to take the rest of the day off and that her volatile behavior owed to being "caught by surprise." *Id.* Approximately one week later, Tasciyan received a letter on Textron stationery stating that she was terminated.

On June 18, 2009, Tasciyan filed an EEOC charge. Doc. No. 17-10. In the charge, Tasciyan states that the discrimination she allegedly faced was based on sex and retaliation. Tasciyan did not fill in the box for any other category of discrimination.

The EEOC issued a right-to-sue letter on March 22, 2011. Doc. No. 4-1. On May 31, 2011, Tasciyan filed her Complaint, asserting claims of sex discrimination and retaliation in violation of Title VII.

Defendants moved to dismiss for failure to state a claim. Defendants argued that Tasciyan could not state cognizable claims for sex discrimination and retaliation. Doc. Nos. 13–15. Defendants also argued that Medical Numerics was not an employer within the meaning of Title VII.

On October 31, 2011, the Court issued a Memorandum Opinion and Order (October 2011 Opinion). Doc. Nos. 24–25. The Court granted Defendants' Motion to Dismiss in relation to the argument that Medical Numerics was not a Title VII employer per se. However, the Court held that it was plausible that Medical Numerics was integrated with Textron and Overwatch. The Court also granted the Motion, without prejudice, as to Tasciyan's sex discrimination claim and denied it as to her retaliation claim.

In response, Tasciyan filed a document containing the dual-caption of "Plaintiff's Reply to Memorandum Opin[i]on" and (2) "Amendment to Complaint." Doc. No. 26. The Court treated this Document as both an Amended Complaint and Motion for Reconsideration. Around the same time, Tasciyan filed a document she labeled as a Cross-Motion for Summary Judgment. Doc. No. 23.

On December 6, 2011, the Court issued a Memorandum Opinion and Order (December 2011 Opinion) in response to these documents. In this Opinion, the Court denied Tasciyan's

Motion for Reconsideration and Cross-Motion for Summary Judgment. Furthermore, although refraining from dismissing Tasciyan's amended claim for sex discrimination sua sponte, the Court noted that it was deficient. The Court eventually issued a short Order dismissing Tasciyan's sex discrimination claim with prejudice. Doc. No. 38.

Following the Court's December 2011 Opinion, Tasciyan filed a document titled "Response to the Scheduling Order." Doc. No. 34. In this document, Tasciyan cursorily requests the Court to allow her to amend her Amended Complaint to add claims for age and national origin discrimination. The Court will treat this document as a Motion to Amend despite the fact that (1) it was not docketed as a motion and (2) Tasciyan suggests that it is not a motion. *See* Doc. No. 41 at 7.

On March 6, 2012, Defendants filed a Motion for Summary Judgment. Doc. No. 39. Defendants press three primary arguments in this Motion. First, Defendants contend that no reasonable juror could rule in favor of Tasciyan on her sex discrimination claim because she cannot show that Defendants' allegedly nonretaliatory reasons for firing her are pretextual. Second, Defendants argue that no reasonable juror could conclude that Medical Numerics is integrated with Overwatch and Textron. Third, Defendants maintain that Tasciyan's Motion to Amend fails as a matter of law because she failed to exhaust administrative remedies on her age and national origin discrimination claims.

On May 29, 2012, Tasciyan filed documentation that she retrieved from an official U.S. government website: http://www.usaspending.gov. *See* Doc. Nos. 44-1, -2. One such document purports to indicate that Medical Numerics had 80 employees. *See* Doc. No. 44-1 at 3. Defendants filed a short Motion to Strike this document on the ground that it is inadmissible hearsay. Doc. No. 46.

## II.      STANDARD OF REVIEW

### A.      Motion for Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot

support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

**B.      Motion to Dismiss—Rule 12(b)(1)**

"There are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* Where the defendant contends that the complaint fails to allege facts sufficient to establish subject matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* "Second, it may be contended that the jurisdictional allegations of the complaint [are] not true." *Adams*, 697 F.2d at 1219. In such cases, "the court is free to consider exhibits outside the pleadings to resolve factual disputes concerning jurisdiction." *Zander v. United States*, 843 F. Supp. 2d 598, 603 (D. Md. 2012) (internal quotation marks omitted) (quoting *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (2002)).

**III.     LEGAL ANALYSIS**

**A.      Retaliation**

"A plaintiff lacking direct evidence of retaliation may utilize the *McDonnell Douglas . . .* framework to prove a claim of retaliation." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). "In the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non-retaliatory reason for the action." *Id.* "If the employer sets forth a legitimate, non-retaliatory explanation for the action, the plaintiff

then must show that the employer's proffered reasons are pretextual or his claim will fail." *Id.*

"More specifically, the plaintiff can prove pretext by showing that the 'explanation is "unworthy

of credence" or by offering other forms of circumstantial evidence sufficiently probative of

[retaliation].'" *Id.* (quoting *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004)).

"To establish [her] prima facie case of retaliation, [Tasciyan] must show that [she]

engaged in protected activity, that [Defendants] took adverse action against [her], and that a

causal relationship existed between the protected activity and the adverse employment activity."

*Id.* (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)).

"An employee may satisfy the first element by showing that she opposed a practice that

Title VII prohibits." *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 675 (2011) (citing *Davis*

*v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 616–17 (D. Md. 2009)). "One court has

defined opposition as 'utilizing informal grievance procedures as well as staging informal

protests and voicing one's opinions in order to bring attention to an employer's discriminatory

activities.'" *Id.* (quoting *Davis*, 639 F. Supp. 2d at 617). "For such activity to constitute

opposition, the plaintiff must have a reasonable and good faith belief that the conduct that she

opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Clark Cnty. Sch. Dist. v.*

*Breeden*, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee

communicates to her employer her reasonable belief that the employer has engaged in

discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nash. and Davidson Cnty., Tenn.*, 555

U.S. 271, 276 (2009)).

Element three of the prima facie case for retaliation relates to causation. Generally,

plaintiffs must demonstrate that the alleged opposition caused the at-issue adverse action through

two evidentiary routes. First, plaintiffs may show that the adverse act bears sufficient temporal

proximity to the protected activity. *See, e.g.*, *Breeden*, 532 U.S. at 273–74. Second, as this Court has consistently held, "plaintiffs may state a prima facie case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation." *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 881 (D. Md. 2012) (citing cases); *see also, e.g.*, *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (holding that "other relevant evidence may be used to establish causation" where temporal proximity is missing).

In this case, Tasciyan engaged in protected activity by communicating to Defendants her reasonable belief that Medical Numerics' failure to promote her was due to her gender. It is undisputed that Tasciyan has a PhD from a prestigious university, worked for Medical Numerics for several years, and was the sole female in the office. Based on these facts, a reasonable juror could conclude that Tasciyan's belief that Defendants discriminated against her by failing to promote her was reasonable.

The second element of the prima facie case, material adversity, is easily satisfied because Defendants terminated Tasciyan. Therefore, the question is whether Tasciyan has stated a prima facie case of causation. A reasonable juror could so conclude. In terms of temporal proximity, Defendants fired Tasciyan two to two-and-a-half months after she complained about perceived discrimination. Although the question is unsettled, this temporal proximity may be sufficient for a reasonable juror to conclude that Tasciyan's firing was in reprisal for her protected activity. *See Cerberonics*, 871 F.2d at 457.

However, the Court need not make this determination inasmuch as Tasciyan has submitted other evidence that is probative of causation. It is undisputed that Solomon and Steagall met with Tasciyan and asked her to remove her accusatory statements from the evaluation form because they were supposedly inappropriate. Coupled with temporal proximity

of two to two-and-a-half months, a reasonable juror could infer from this event that Tasciyan's complaint bothered Solomon and Steagall and, hence, induced them to fire her.

The next step of the *McDonnell Douglas* framework asks whether Defendants have articulated one or more nonretaliatory reasons for terminating Tasciyan. Defendants argue that Tasciyan displayed unprofessional conduct by copying a customer on the defensive email she sent to Solomon. They also argue that turning belligerent and ultimately walking out of the March 10, 2009 constituted an occasion for termination. Defendants further argue that Tasciyan displayed a pattern of insubordination and volatile behavior tracing back until at least 2008. A reasonable juror could conclude that any one of these reasons is nonretaliatory.

The third, and final, step in the *McDonnell Douglas* framework for retaliation asks whether a reasonable juror could conclude that the proffered nondiscriminatory reasons are pretexts for discrimination. Defendants argue that Tasciyan's allegedly chronic insubordination and volatility preclude a reasonable juror from so concluding. To buttress this argument, Defendants rely primarily on three instances of misbehavior: (1) the alleged misconduct that lead to the March 2008 disciplinary meeting; (2) Tasciyan's allegedly abusive email in which she copied the customer; and (3) Tasciyan's behavior during and after the March 10, 2009 disciplinary meeting, including the email in which Tasciyan stated that she refused to take the rest of the day off.

Although Defendants' arguments are not without force, construing the evidence favorably to Tasciyan, a reasonable juror could find that these reasons are pretextual. Even though Defendants allege that Tasciyan displayed improper behavior in the 2008 period, Defendants' performance review of January 5, 2009 states that the situation had progressed reasonably well. Furthermore, while Tasciyan seems to concede that she grew belligerent and

stormed out of the March 10, 2009 meeting, it is up to the trier of fact to determine whether her behavior was a reasonable reaction to the perception that she had been treated unfairly. Moreover, the disciplinary report that Zako gave Tasciyan at the meeting states that it was Tasciyan's second notice of misbehavior when the report includes a space for final notice. If growing belligerent and storming out of the meeting truly motivated Defendants' decision, a reasonable juror could infer that Tasciyan should have been given final notice before being terminated.

True, Tasciyan copied a customer on a somewhat unprofessional email she sent Solomon. However, Solomon questioned whether Tasciyan had written the script correctly in an email in which he as well copied the customer. Furthermore, on its face, the email does not seem overly confrontational or abusive. In short, a reasonable juror could conclude that, under the circumstances, Tasciyan's email was not inappropriate or, alternatively, that it was no more inappropriate than Solomon's.

It is undisputed that Solomon and Steagall met with Tasciyan and asked her to remove her accusatory statements from the evaluation form because they were inappropriate in that context. It is also undisputed that the same supervisors were present at the March 10, 2009 meeting and participated in Tasciyan's firing. Construing the evidence favorably, a reasonable juror could conclude that the behavior of determining that Tasciyan's discrimination complaint was inappropriate and participating three weeks later in her termination displays a retaliatory animus on the part of Solomon and Steagall. Therefore, a reasonable juror could conclude that Defendants' allegations of insubordination, volatility, and otherwise improper conduct are pretexts for retaliation. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Tasciyan's retaliation claim.

**B.      Whether Defendants Are Integrated Employers**

The Court held in its October 2011 Opinion that Medical Numerics, per se, was not an employer within the meaning of Title VII. However, the Court held that Tasciyan had stated a facially plausible claim that Defendants were integrated employers. Therefore, the issue is whether a reasonable juror could conclude that Defendants are integrated employers within the meaning of Title VII.

A plaintiff may bring a Title VII claim against an employer with fewer than fifteen employees where that employer is "integrated" with another employer/s with a sufficient number of employees. *See, e.g.*, *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000). Courts apply the "integrated employer test" to make this determination. *Id.* (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir.1999)). Under this test, "the court considers the existence of four factors between the parent and its subsidiary: (1) common management; (2) the interrelation between operations; (3) centralized control; and (4) the degree of common ownership and financial control." *Id.*

There is no bright-line test for determining whether two or more employers are integrated; the integrated employer test necessitates a fact-intensive inquiry. In the Title VII context, courts have identified factors that tend to prove "'that one company employs the other's employees.'" *Id.* (quoting *Thomas v. Bet Sound–Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 456 (D. Md. 1999)). Some of these factors are that

(1) one company's employees hired and fired the other's employees and/or authorized [layoffs], recalls, and promotions of such employees; (2) one company routinely transferred employees between it and the other company, used the same

work force, and/or handled the other's payroll, (3) one company exercises more

than general oversight of the other's operations . . . .

*Id.* (quoting *Thomas*, 61 F. Supp. 2d at 456).

In this case, a reasonable juror could conclude that Defendants are integrated employers for Title VII purposes. Although Defendants contend that Medical Numerics was separately managed, a reasonable juror could infer that Textron and Overwatch exercised considerable control over Tasciyan's discipline and ultimate termination. The record contains an email from Steagall to Tasciyan in which Steagall tells her that "Textron Systems HR has advised me to direct you to take the rest of the day off." Doc. No. 39-8 at 2. A reasonable juror could infer from this email that Steagall (i.e., Medical Numerics) was acting at the behest of Textron during the firing incident.

The record similarly reflects that officials for both Textron and Overwatch were actively involved in the disciplinary and termination processes. Zako, HR Manager for Overwatch, attended both the March 2008 and 2009 meetings. In the March 2009 meeting, Zako served Tasciyan with a disciplinary report bearing the heading "Textron Systems." Likewise, Tasciyan's termination letter is on Textron letterhead and bears the signature of Robert Cuddyer, who identifies as HR Manager of Textron Systems. Doc. No. 41-8.

Along those lines, a few months after her termination, Zako sent Tasciyan a letter bearing the heading Overwatch/Textron Systems in which she relays Overwatch's demand that Tasciyan return NIH office keys. Doc. No. 17-15. In sum, the record contains evidence from which a reasonable juror could conclude that Textron and Overwatch exercised management authority over pertinent aspects of Medical Numerics' operations and that Defendants' operations were meaningfully interrelated.

The record contains other evidence that is probative of integration. Tasciyan has adduced an earnings statement bearing the heading Textron, stating that it originated from the Textron Service Center. Furthermore, Tasciyan recently filed a document from the website http://www.usaspending.gov indicating that Medical Numerics has 80 employees. Because Medical Numerics has only 13–14 employees, this document supports the inference that Defendants were integrated. *See* Doc. No. 44-1 at 3.

Defendants move to strike this document on the basis that it is inadmissible hearsay. It is too early in the litigation for the Court to conclusively make this determination. As Tasciyan obtained the document from an official U.S. Government website, the document may qualify as an exception to hearsay under the public records exception. *See* Fed. R. Evid. 803(8).[1] What is more, even if the document is inadmissible, Tasciyan's other evidence is sufficient for a reasonable juror to conclude that Defendants are integrated employers. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to the argument that they are not integrated employers under Title VII. The Court also denies, without prejudice, Defendants' Motion to Strike.

## C.     Motion to Amend

Assuming Tasciyan properly presented it, the Court denies Tasciyan's Motion to Amend her Amended Complaint to add claims for age and national origin discrimination. Tasciyan failed to file an EEOC charge for these claims and nothing in the record indicates that the EEOC undertook an investigation of such claims. This is unsurprising considering that the allegations in Tasciyan's EEOC charge make no mention of age or national origin discrimination. Doc. No. 17-10. Hence, the Court denies Tasciyan's Motion to Amend.

---

[1] To be sure, this assumes that a proper foundation for the document can be laid.

## IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Summary Judgment, **DENIES** Defendants' Motion to Strike, and **DENIES** Tasciyan's Motion to Amend. A separate Order will follow. The Court will set the case in for trial.[2]

| | |
|---|---|
| _____October 9, 2012_____ | _____/s/_____ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |

---

[2] Tasciyan should understand that, while the Court must construe her evidence in the most favorable light at this juncture, the Court will require both Parties to adhere to the rules of evidence, burden of proof, and procedural rules for the conduct of trials. The Court strongly advises Tasciyan to obtain the assistance of legal counsel. The failure to do so may prove fatal to her claim.